**NOT YET SCHEDULED FOR ORAL ARGUMENT**

# United States Court of Appeals for the District of Columbia Circuit

### No. 12-5374

ELLA WARD,

*Plaintiff-Appellant,*

*v.*

ERIC K. SHINSEKI,
Secretary, U.S. Department of Veterans Affairs,

*Defendant-Appellee.*

*On Appeal from the United States District Court for the District of Columbia in Case No.1:10-CV-01414-RLW (Hon. Robert Leon Wilkins, Judge)*

## REPLY BRIEF FOR APPELLANT ELLA WARD

**THE KHAN LAW GROUP, PLLC**
Karen A. Khan No. 455297
2200 Pennsylvania Avenue, NW.
Fourth Floor East
Washington, D.C. 20037
(202) 290-1670
(202) 379-0409 Fax

*Counsel for Appellant Ella Ward*

October 23, 2013

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................i

SUMMARY OF THE ARGUMENT ......................................................................1

ARGUMENT .........................................................................................................2

    I.  Shinseki Ignores the Undisputed Fact That Any Attorney (Disabled or Otherwise) Could Work At Home So Long As They Had a Satisfactory Performance Rating. ...............................................2

    II.  Ward Never Agreed To Provide Any Additional Medical Information On May 31, 2007. ......................................................................4

CONCLUSION .......................................................................................................9

CERTIFICATE OF COMPLIANCE .....................................................................10

CERTIFICATE OF SERVICE ...............................................................................11

# TABLE OF AUTHORITIES

None

## SUMMARY OF THE ARGUMENT

Any attorney, disabled or otherwise, could work at home so long as they had a satisfactory performance rating, and Shinseki ignores this fact. Because her performance was always rated as successful, Ward was fully qualified to work full-time at home in BVA's flexiplace program just like any other BVA GS-14 counsel who met the standard of a successful or equivalent performance rating. It was only because she is disabled that Cohn and Kramer applied increasingly onerous standards designed to force her out of her full-time position, and to effectively preclude her from working at home in her full-time status in the flexiplace program as an accommodation for her disability. Finally, Ward never agreed to provide any additional medical information during the May 31, 2007meeting with Cohn and Kramer.

# ARGUMENT

**I. Shinseki Ignores the Undisputed Fact That <u>Any Attorney</u> (Disabled or Otherwise) Could Work At Home So Long As They Had a Satisfactory Performance Rating.**

The undisputed evidence is that Ward's evaluations <u>always</u> rated her performance as either "successful," "fully successful," or "fully successful or better." Ward clearly met the criteria to be placed in BVA's flexiplace work-at-home program <u>regardless</u> of whether she is disabled. Still, she was held to a higher standard <u>because</u> she is disabled.

During 2007, BVA had a flexiplace program which allowed **any** attorney to work at home so long as they had a successful evaluation. (R. 27-10, Tobias Tr. 16:7-20; 22:21-26:15). Portable laptops were provided to attorneys who worked at home, and they were permitted to use dictation machines to prepare their decisions. (R. 27-5, Kramer Tr. 39:18-40:17; R. 27-14, ¶4). Also, attorneys were not required to transcribe their decisions. (R. 33-2, at ¶2). BVA's flexiplace program did not require its participants to sit at a desk for specified lengths of time to do their work (R. 27-10, Tobias Tr. 24:12-15 ), and did not require its participants to certify how long they could sit at a desk or how many breaks will be taken at home and for how long. (R. 27-17). The criteria for working at home in the BVA's flexiplace program was that employees have a performance rating of successful or equivalent. (R. 27-17, pages 16-28, at page 22 - "Telework Criteria"). Ward met this standard

<u>and</u> Cohn had the impression that she was an "okay" attorney. (R. 27-3; R. 27-4; R. 27-12, Cohn Tr. 96:7-21). Cohn further admitted he recognized she needed an accommodation for her disability <u>and that the accommodation was for her to work at home in BVA's flexiplace setting.</u> (R. 27-14, pages 7-9).

While the court acknowledged that Ward received a fully successful or better evaluation in April 2007, it improperly disregarded the evaluation and negatively opined that much of the review form is "blank." (R. 39 at p. 3). Notably, in his Motion for Summary Judgment, Shinseki <u>never</u> claimed that this evaluation was defective, inaccurate, or without merit. (R. 25, pages 10-18). It was the court who improperly attacked Ward's evaluation and discredited her performance without any evidentiary basis. Now, Shinseki improperly attempts to 'jump on the court's erroneous bandwagon.' However, BVA's admissible business record stands and the court overstepped its bounds in arbitrarily discrediting Ward's performance.

Ward was fully qualified to work full-time at home in BVA's flexiplace program just like any other BVA GS-14 counsel who met the standard of a successful or equivalent performance rating. It was only <u>because</u> she is disabled that Cohn and Kramer applied increasingly onerous standards designed to force her

3

out of her full-time position, and to effectively preclude her from working at home in her full-time status in the flexiplace program as an accommodation for her disability.

## II.    Ward Never Agreed To Provide Any Additional Medical Information On May 31, 2007.

Notwithstanding Shinseki's flawed arguments to the contrary, the undisputed testimony of Ms. Ward demonstrates that she never agreed to provide any additional medical information to Cohn and Kramer. As she testified about the May 31, 2007 meeting with Cohn and Kramer:

> 18 Q What at the meeting?
> 19 A Well, they started to -- Kramer took out the letter
> 20 that Dr. Fuze had written. And I think he had my BVA file
> 21 opened on the desk or something, a bunch of papers, you know.
> 22 And they began to read from Exhibit 5, Dr. Fuze's letter.
> 23 They started to read a sentence, and they started to discuss
> 24 it between the two of them.
> 25 You know, like Kramer would read substantial limits

Page 91

> 1 standing, going sitting down. What do you mean carrying
> 2 heavy case files? You know. What does she mean by this?
> 3 You know, you're going to have to carry case files and how
> 4 are you going to carry case files. And this and that.
> 5 And then he would read the next sentence and say,
> 6 well, how are you going to sit to do a case if you can't sit
> 7 for prolonged period. And Kyon would be like, how is she
> 8 going to do that. And I'm sitting there. You know, they're
> 9 talking about me like I'm not there.
> 10 So I just sat there and listened to the back and
> 11 forth, back and forth, line by line analysis of my doctor's
> 12 letter. And then when they were done, they asked me -- you

4

13 know, they started to ask me questions from the letter.
14 Well, Kyon said to me, well, you will be required
15 to come in twice week. And your doctor says here that you
16 can only come in once a week because the disability affects
17 your mobility and you won't be able to come in twice a week.
18 And you have to come in twice a week. So how are you going
19 to work at home if you can't come in once a week as
20 required -- twice a week.
21 And I said, well, I was under the impression it was
22 once a week. All the people I know who work at home come in
23 once a week, even on Team III, so I said, but that's not a
24 problem. I can come in twice a week, you know.
25 And he went on to say, well, how many pounds can

Page 92

1 you lift? Your doctor says you can't lift any heavy cases.
2 Each case weighs about 50 pounds. How are you going to lift
3 that? And I said, well, I'll bring a dolly and a cart to get
4 it loaded in my car like everybody else does.
5 So we went down, you know, and at the end of all of
6 this back and forth, back and forth, Kramer said, well, you
7 think you can work at home full time. And we have not -- we
8 don't think you can do it. And so we think you should work
9 part-time. We have approved a part-time position for you to
10 work at home.
11 And I said, well, does that mean that you have
12 denied my work at home accommodation? Because I don't think
13 I -- it was -- I don't think -- full time is something I'm
14 asking for. I'm a full-time attorney. So you're essentially
15 changing my employment. You're forcing me to work part time
16 in order to work at home.
17 He said, well, the only way you're going to work at
18 home is if you work part time. Kramer said this to me. The
19 only way you're going to work at home is if you work part
20 time. If you do not want to work part time, you will be
21 required to come to work like everybody else. And if you
22 don't do that, you will be disciplined.
23 I said to Mr. Kyon, it's clearly impossible for me
24 to come to work like everybody else given the letter my

5

25 doctor has written, given the fact that I've used all this

Page 93

1 FMLA leave trying to balance, manage this disability. I have
2 to manage it. I can't manage it at work.
3 I said I think -- I don't think that's what the law
4 says for the granting of an accommodation. You know, you're
5 trying to coerce me and force me into coming -- into changing
6 my job. And I'm not going to change my job. My job is a
7 full-time counsel. That's how I want to go home and work at
8 home.
9 And Kyon said, well, frankly, I'm with Mr. Kramer
10 on this. I don't think you can do it. And what you need to
11 do is to work part time at home and then we'll see. So I
12 said -- at that point I said, well, I think you're
13 discriminating against me because I don't think that's what
14 the law says. I think that this is unfair because my doctor
15 says -- my doctor has certified the difficulty of having the
16 disability.
17 At that point Mr. Kramer said -- I said, look, man,
18 it's production based, okay? So --
19 Q Who said this?
20 A I said that. I said this is production based.
21 Every week I'm required to do three credits. **Why can't**
22 **I -- what is the resistance to letting me go home in the**
23 **status I'm in?** In one or two weeks it will become crystal
24 clear whether I am able to perform my job with this
25 disability and manage my disability at home? Because you can

Page 94

1 look at the numbers and say, are her three cases in or not.
2 **Can't you even let me try to do this job with my -- in my**
3 **same status?**
4 **And Mr. Kramer said, Laurie, frankly no. He said**
5 **it would not be fair to other disabled people at the Board if**
6 **we were to let you have a full-time work at home**
7 **accommodation. He said, because your disability does not**
8 **warrant a full time accommodation at home. It does not**

6

**9 warrant it. And it would be unfair to other disabled people
10 if we let you do it. Because everybody will see you doing
11 it, and your disability does not warrant it.**
12 And I said, well, I guess -- you know, what is my
13 choice then. He said your choice is part time work at home
14 or you come to work full time. That's your choice. I said,
15 well, there's got to be something that I can do. That can't
16 be the choice. That's illegal.
17 And Kramer said look, the only way you will work
**18 full time at home, your doctor has to -- is if you prove that
19 you can do it. You have to prove that you can do it. I
20 said, how can I prove that I can do it if you're not letting
21 me do it.**
22 He said, well, your doctor has to prove it. And I
23 said, how is my doctor going to prove that. He said, well,
24 they're going to do this, that, that -- he rambled off a
25 whole list of stuff. And I said, okay. But I'm going to

Page 95

1 have to give this to my doctor again, because this is like a
2 third thing you're asking. **I said, would you mind writing it
3 down exactly what you need.**
4 And you have denied my request, and I want this
5 denial in writing. Okay? I said you have denied my request
6 for a full-time accommodation. I want that in writing. And
7 I also want you to state why you are denying my request for a
8 full-time accommodation.
**9 I also want you to tell me exactly what proof you
10 require from my physician. Because you're saying my
11 disability does not warrant this kind of accommodation. And
12 he said, fine, if you can't remember it, we'll write it down
13 for you.**
14 Q Who said this?
15 A Kramer and they laughed, you know. And I didn't
16 say anything. I was -- you know, I said this is very
17 humiliating to sit here and watch you two guys, you two
18 attorneys debate my disability like I'm not even sitting
19 here. I said, you're breaking the law. This is illegal.
20 You're discriminating against me, and put it in writing. I

7

>21 want it in writing that you're denying my accommodation work
>22 at home.
>23 I said, you drag your feet on it for two months
>24 while I'm suffering. I'm having all these difficulties. I'm
>25 trying to get here to do my job. You know I'm suffering, and

>Page 96
>
>1 you're dragging it -- you're dragging your feet on it, and
>2 that is unfair to me. Because Constance told me this will be
>3 done expeditiously. This is not expeditious.
>4 And so, he said, fine. We'll write it down for
>5 you, Laurie, if you can't remember what we said. And I said,
>6 thank you very much. I would appreciate a written denial and
>7 your requirements for proof that I can work full time at
>8 home. I'd like to -- you know, that would make it easier for
>9 me to process that. And Steve Kyon said, fine, we'll write
>10 it down for you. And I said, could you do it quickly. And
>11 he said, yes, we'll do it quickly. And that was the end of
>12 the meeting.

(R. 27-8, Ward Tr. 90:18-96:12).

Simply put, Ward could not possibly have agreed to provide additional information that Cohn and Kramer had not yet requested! Instead, she asked that they write down what proof they were requiring from her physician. Further, after receiving Cohn's June 5, 2007, memo, Ward still never agreed to provide any additional medical information, since the information requested was impossible for her physician to "certify." (R. 27-8, Ward Tr. 96:14-111:14).

8

## **CONCLUSION**

For the reasons stated in the opening brief and this reply, reversal is warranted.

                              Respectfully submitted,

                              **THE KHAN LAW GROUP, PLLC**

Dated: October 23, 2013        By: /s/ Karen A. Khan
                                           Karen A. Khan No. 455297
                                           2200 Pennsylvania Avenue, NW.
                                           Fourth Floor East
                                           Washington, D.C. 20037
                                           (202) 290-1670
                                           (202) 379-0409 Fax

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32(a).

    __X__ The brief contains 2,442 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

    _____ The brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

    __X__ The brief has been prepared in a proportionally spaced typeface using MS Word 2007 in a 14 point Times New Roman font or

    _____ The brief has been prepared in a monospaced typeface using MS _____ in a ___ characters per inch _____ font.

Dated: October 23, 2013                    By: /s/ Karen A. Khan
                                                                                 Karen A. Khan No. 455297
                                                                                 Counsel for Appellant

**United States Court of Appeals
for the District of Columbia Circuit**
*Ella Ward v Eric Shinseki*, No. 12-5374

**CERTIFICATE OF SERVICE**

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by THE KHAN LAW GROUP, PLLC, Attorneys for Appellant to print this document. I am an employee of Counsel Press.

On **October 23, 2013**, Counsel for Appellant has authorized me to electronically file the foregoing **Reply Brief of Appellant** with the Clerk of Court using the CM/ECF System, which will serve, via e-mail notice of such filing, to any of the following counsel registered as CM/ECF users:

   R. Craig Lawrence, Esq.
   Alexander D. Shoaibi, Esq.
   U.S. Attorney's Office
   555 4th Street, N.W., Room E-4218
   Washington, D.C. 20530
   202-514-7236
   craig.lawrence@usdoj.gov
   alexander.d.shoaibi@usdoj.gov

A courtesy copy has also been mailed to the above listed counsel.

Unless otherwise noted, 5 paper copies have been filed with the Court on the same date via Express Mail.

October 23, 2013                                             /s/ Robyn Cocho
                                                                                  Robyn Cocho
                                                                                  Counsel Press